UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

|  |  |
|---|---|
| FNU KAUSHIK SAURABH; CAROLINA FRANCO DE POPPE; SASIKIRAN DADI; and SRI KRISHNA CHAITANYA ANNE, <br><br> Plaintiffs, <br><br> v. <br><br> EB5 AFFILIATE NETWORK, LLC, <br><br> Defendant. | Case No. 26-1228 <br><br> **CLASS ACTION COMPLAINT** <br><br> **JURY TRIAL DEMANDED** |

## COMPLAINT

**TO THE HONORABLE COURT:**

**COME NOW** Plaintiffs Fnu Kaushik Saurabh, Carolina Franco de Poppe, Sasikiran Dadi, and Sri Krishna Chaitanya Anne (together, Plaintiffs), individually and as proposed class representatives on behalf of all others similarly situated, by counsel, allege as follows:

### I. OVERVIEW OF ACTION

1. This securities-fraud, unlawful broker-dealer, fiduciary-duty, and contract action arises from EB5 Affiliate Network, LLC's (EB5AN) solicitation, placement, and administration of direct EB-5 investments in Higher Ground Education's Montessori school funds, including HGE FIC I LLC, HGE FIC L LLC, HGE FIC M LLC, and HGE FIC N LLC (collectively, the HGE Funds), which EB5AN marketed and processed during the July 2021–March 2022 lapse of the federal EB-5 Regional Center program.

1

2.      During the lapse, new EB-5 investments were required to be direct and to create at least ten full-time U.S. jobs per investor, with only direct jobs counting toward the statutory threshold, which heightened the materiality of school-level viability and staffing sustainability.

3.      EB5AN, operating from and through Puerto Rico for these offerings, promoted the HGE Funds as $500,000 Targeted Employment Area (TEA) direct EB-5 opportunities that would comfortably exceed the ten-job requirement per investor, while simultaneously positioning itself as Special Manager to administer immigration deliverables and to handle investor reservations, admissions, escrow coordination, and communications.

4.      Plaintiffs and other investors relied on EB5AN's written representations, business plans, TEA designations, and immigration-facing materials that projected approximately 145 full-time direct jobs for one cohort—about 13.2 jobs per investor by Year 4—and represented that EB5AN would administer and support I-526 and I-829 filings, while controlling intake and escrow processes using a San Juan, Puerto Rico address.

5.      EB5AN failed to conduct and failed to disclose the absence of basic diligence into HGE's viability, bridge-financing dependency, and site-level fragility that materially undermined the feasibility of creating and sustaining direct jobs through I-829 adjudications, and it omitted material countervailing facts necessary to make its statements not misleading.

6.      EB5AN also acted as an unregistered broker-dealer by soliciting, advising on, and effecting purchases of securities for transaction-based compensation while unregistered with the Securities and Exchange Commission (SEC) and not a member of the Financial Industry Regulatory Authority (FINRA).

7.      When HGE and affiliates entered Chapter 11 in 2025 following foreclosures and school closures that eliminated required direct jobs, Plaintiffs and similarly situated investors lost

both their capital and the immigration benefits EB5AN promised would be achievable under the direct-jobs regime.

8.     Plaintiffs seek class-wide relief, including rescission of contracts made and performed in violation of federal securities laws, restitution and disgorgement of EB5AN's ill-gotten gains, compensatory damages for securities fraud and related claims, statutory remedies, equitable accounting and constructive trust relief, and all further remedies at law and in equity.

## II.    PARTIES

9.     Plaintiff Fnu Kaushik Saurabh (Saurabh) is a foreign-national EB-5 investor who invested $500,000 in HGE FIC I LLC on or about February 9, 2022.

10.    Plaintiff Carolina Franco de Poppe (Franco) is a foreign-national EB-5 investor who invested $500,000 in HGE FIC L LLC on or about March 10, 2022.

11.    Plaintiff Sasikiran Dadi (Dadi) is a foreign-national EB-5 investor who invested $500,000 in HGE FIC M LLC on March 3, 2022, and whose I-526 priority date was March 9, 2022.

12.    Plaintiff Sri Krishna Chaitanya Anne (Anne) is a foreign-national EB-5 investor who subscribed for one Class B Unit in HGE FIC N LLC for $500,000, with her subscription executed on March 9, 2022 and accepted on March 22, 2022.

13.    Defendant EB5 Affiliate Network, LLC (EB5AN) is a Florida limited liability company that, at all relevant times, marketed, processed, and administered the HGE Fund offerings from and through Puerto Rico, including through a San Juan, Puerto Rico address used in offering and subscriber materials and escrow-related communications.

### III.    JURISDICTION AND VENUE

14.    This Court has federal-question jurisdiction under 28 U.S.C. § 1331 because Plaintiffs assert claims under the Securities Exchange Act of 1934 ("Exchange Act"), including Section 10(b) and SEC Rule 10b-5, and Section 15(a) with remedies under Section 29(b).

15.    Jurisdiction also lies under Exchange Act Section 27, 15 U.S.C. § 78aa, which vests exclusive federal jurisdiction over claims arising under the Exchange Act and SEC rules promulgated thereunder.

16.    The Court has supplemental jurisdiction under 28 U.S.C. § 1367 over any claims under Puerto Rico law that form part of the same case or controversy, equitable or otherwise.

17.    Venue is proper in this District under 28 U.S.C. § 1391(b) and 15 U.S.C. § 78aa because a substantial part of the events or omissions giving rise to the claims occurred in Puerto Rico and EB5AN transacted business in Puerto Rico, using a Puerto Rico address to solicit investors, process reservations and admissions, and coordinate escrow for the HGE Funds.

18.    Plaintiffs are creditors in pending Chapter 11 cases of Higher Ground Education, Inc. and certain affiliates; no relief in this case seeks to require performance by, or to recover property of, any debtor's estate in violation of 11 U.S.C. § 362, and Plaintiffs expressly reserve all rights to pursue claims and remedies in the bankruptcy court as appropriate.

### IV.    FACTUAL ALLEGATIONS

19.    The EB-5 Immigrant Investor Program confers conditional lawful permanent residence on qualifying foreign nationals whose investments create at least ten full-time jobs for U.S. workers.

20.    From July 2021 to March 2022, the Regional Center program lapsed, and only direct investments were permitted, which required that only direct jobs count toward the job-creation threshold for each investor.

21.    Under the direct-jobs regime, school and site-level viability, job-sustainment timing, and staffing sensitivity became acutely material to I-829 success, which EB5AN emphasized it would support as Special Manager.

22.    EB5AN marketed the HGE Funds as $500,000 TEA-eligible direct EB-5 investments that would achieve and sustain the ten-job threshold per investor, including by disseminating business plans, TEA letters, subscription and operating agreements, and immigration-facing exhibits.

23.    EB5AN used a San Juan, Puerto Rico address for investor communications and submissions and controlled investor "admissions" into the HGE Funds while acting as the day-to-day intake, placement, and administration engine for the offerings.

24.    EB5AN identified escrow accounts at Signature Bank "FBO" the HGE Funds and utilized Puerto Rico-based correspondence and administration to direct investor wires and to process subscription materials.

25.    EB5AN identified itself in offering and immigration-facing materials as Special Manager, described its role in I-526 and I-829 support, and positioned itself as the central facilitator and administrator of these securities placements.

### Plaintiffs' Investments And Reliance

26.    Dadi subscribed for Class B Units in HGE FIC M LLC and wired $500,000 on March 3, 2022, and he filed an I-526 petition with a March 9, 2022 priority date.

27.     Saurabh subscribed for Class B Units in HGE FIC I LLC and wired $500,000 on or about February 9, 2022.

28.     Franco subscribed for Class B Units in HGE FIC L LLC and wired $500,000 on or about March 10, 2022.

29.     Anne subscribed to HGE FIC N LLC for a $500,000 Class B Unit; he executed his subscription and investor suitability documents on March 9, 2022, acknowledged the escrow agreement on March 9, 2022, and his subscription was accepted by HGE FIC N LLC on March 22, 2022.

30.     Plaintiffs reviewed EB5AN's business plans and materials, including TEA designations, staffing projections, capitalization summaries, and EB5AN's representations that it served as Special Manager to administer immigration deliverables, escrow, and investor onboarding, and they relied on those statements in making their investments.

**The Six-School Plan, Capital Structure, And Undisclosed Risks**

31.     For at least one cohort, EB5AN identified a six-school plan spanning Illinois, Washington, Kansas, Oklahoma, and Florida, supported by TEA designation letters issued in or about January 2022.

32.     EB5AN's business plan projected approximately $11.936 million in total start-up costs to be funded by about $6.436 million in Class A equity and up to $5.5 million from eleven EB-5 investors at $500,000 each, while stating a 1.0% annual preferred return that was not guaranteed.

33.     Staffing charts mapped a ramp to approximately 145 full-time direct jobs by Year 4, which equated to about 13.2 jobs per investor for the cohort and suggested a cushion above the ten-job requirement.

34.    A contemporaneous bridge-financing letter disclosed that about $686,000 had already been advanced as bridge equity from March 2021 through February 2022 and would be repaid with EB-5 proceeds within about one year, with additional bridging possible if subscriptions lagged, thereby illustrating dependency on new EB-5 inflows.

35.    EB5AN's communications and I-9 support letters asserted its Special Manager status and described early hiring and immigration support, while EB5AN's subscription and escrow instructions identified Signature Bank accounts "FBO" the HGE Funds and directed investor submissions to EB5AN's Puerto Rico address.

36.    Despite these representations, EB5AN did not provide, and Plaintiffs did not receive, independent diligence evaluating HGE's enterprise-level losses and liquidity, school-level lease and asset risks, the sensitivity of staffing counts to enrollment volatility and site closures, and the feasibility of sustaining qualifying direct jobs through the I-829 stage in the direct-jobs regime.

**Particularized Misstatements And Omissions**

37.    In January through March 2022, EB5AN disseminated to Plaintiffs a comprehensive business plan that stated the Business Venture will create 145 EB-5-eligible, full-time positions.

38.    The plan stated that each of the eleven Class B members would be allotted approximately 13.2 full-time positions and projected 110 full-time employees by Year 2, 130 by Year 3, and 145 by Year 4 and beyond.

39.    On capitalization and TEA pricing, the plan stated that the Company would receive up to $5.5 million from up to eleven investors at $500,000 minimum each, because the schools were located within TEAs.

40.     The plan disclosed a 1.0% annual preferred return for EB-5 investors, described as not guaranteed, and presented EB5AN as Special Manager for immigration support.

41.     EB5AN's subscription and escrow instructions directed investor wires to Signature Bank "FBO" the HGE Funds, and investor materials routed submissions "c/o EB5 Affiliate Network, LLC, 954 Avenida Juan Ponce de León, Suite 205, San Juan, Puerto Rico 00907," while EB5AN's I-9 letter identified EB5AN as the Special Manager of at least one HGE cohort entity.

42.     These statements were materially misleading when made because EB5AN failed to disclose material adverse facts necessary to make the statements not misleading in the direct-jobs context, including HGE's deteriorating liquidity and site-level fragility, the sensitivity of direct-job counts to enrollment and staffing churn and to closures, and the project's dependence on bridge financing and new EB-5 inflows to normalize cash flows and sustain operations.

43.     EB5AN possessed or had access to the offering materials it prepared and transmitted, controlled investor intake and escrow coordination from Puerto Rico, identified itself as Special Manager, and was financially incentivized by transaction-based compensation and unit interests, which supports a strong inference of scienter. Plaintiffs reasonably relied on EB5AN's statements when wiring their investments and completing their subscriptions in February and March 2022, and their reliance was proximately linked to the material omissions because those omissions bore directly on the feasibility of meeting the direct-jobs requirement.

### Collapse, Loss Causation, And Harm

44.     In 2025, HGE and related entities filed Chapter 11 cases following foreclosures and widespread school closures that decimated the school network and eliminated the direct jobs necessary for Plaintiffs' immigration petitions.

8

45. The risks EB5AN concealed materialized when school closures and financial distress destroyed the staffing assumptions and rendered unsustainable the projected cushion of 145 direct jobs for the cohort and the approximately 13.2 jobs per investor.

46. Plaintiffs thereby lost both their principal investments and the immigration benefits promised and projected by EB5AN, and they incurred damages including lost capital, administrative and related fees, and consequential harms tied to the collapse.

47. Plaintiffs' proofs of claim in HGE-related bankruptcies reflected principal and interest computations from their respective wire or subscription dates, consistent with their losses and with applicable prejudgment interest claims separate from any estate property.

### EB5AN's Unlawful Broker-Dealer Activity

48. EB5AN solicited, advised on, and effected securities transactions for Plaintiffs and similarly situated investors; managed reservations and admissions; controlled subscription intake and escrow coordination; and held itself out as the central contact for placements while receiving transaction-based compensation and unit interests incident to the offerings.

49. EB5AN was not registered with the SEC as a broker-dealer and was not a FINRA member, and no exemption applied to its core conduct in soliciting and effecting securities transactions for compensation.

50. EB5AN's unlawful broker-dealer activity tainted contracts made and performed with and through EB5AN in connection with the offer and sale of HGE Fund securities, rendering those contracts voidable at the election of Plaintiffs and the Class under Exchange Act Section 29(b).

9

## V.    CLASS ACTION ALLEGATIONS

51.    Plaintiffs bring this action as a class action under Federal Rule of Civil Procedure 23 on behalf of all persons who, during the period from January 1, 2021 through December 31, 2022, purchased or otherwise acquired membership interests or units in any of the HGE Funds (including HGE FIC I LLC, HGE FIC L LLC, HGE FIC M LLC, and HGE FIC N LLC) in connection with EB5AN's solicitations, intake, and administration and were damaged thereby (the Class).

52.    Excluded from the Class are Defendant and its parents and subsidiaries, any entity in which Defendant has a controlling interest, Defendant's officers and directors, and the legal representatives, heirs, successors, and assigns of any such excluded person or entity.

53.    The members of the Class are so numerous that joinder of all members is impracticable, as the EB-5 offerings at issue spanned multiple funds and cohorts and, on information and belief, include investors numbering at least in the dozens.

54.    There are questions of law and fact common to the Class, including whether EB5AN violated federal securities laws by making materially false statements or omissions in connection with the offer or sale of securities; whether EB5AN acted as an unregistered broker-dealer; whether contracts are voidable under Section 29(b); whether EB5AN breached fiduciary duties to investors; whether EB5AN was unjustly enriched; and the proper measure of damages and equitable relief.

55.    Plaintiffs' claims are typical of the claims of the Class because they arise from the same course of conduct by EB5AN and are based on the same legal theories, and Plaintiffs and Class members alike suffered similar injuries when the concealed risks materialized.

56.     Plaintiffs will fairly and adequately protect the interests of the Class because they have no conflicts with other Class members and have retained counsel experienced in securities, financial-services, and complex class-action litigation to prosecute this action vigorously.

57.     Common questions of law and fact predominate over any questions affecting only individual members. Plaintiffs and Class members received substantially identical offering materials, including the same business plans, TEA designation letters, subscription agreements, and escrow instructions disseminated by EB5AN. EB5AN's misrepresentations and omissions were uniform across the Class: all investors received the same projections of 145 full-time jobs by Year 4 and approximately 13.2 jobs per investor; all investors were subject to the same omissions regarding HGE's liquidity, site fragility, and bridge-financing dependence; and all investors' subscriptions were processed through the same EB5AN-controlled intake and escrow system.

58.     For the Exchange Act claims, reliance may be presumed under the fraud-on-the-market doctrine or, alternatively, under the *Affiliated Ute* presumption applicable to omissions cases. *Affiliated Ute Citizens v. United States*, 406 U.S. 128, 153-54, 92 S. Ct. 1456 (1972) (holding it is only necessary that the facts withheld be material in the sense that a reasonable investor might consider them important in decision making). The fraud-on-the-market presumption is inapplicable here because the HGE Fund securities were privately placed and did not trade in an efficient public market. *Basic Inc. v. Levinson*, 485 U.S. 224, 248, 108 S. Ct. 978 (1988) (fraud on the market will apply to stocks sold in an efficient public market). Therefore, the *Affiliated Ute* presumption applies because Plaintiffs' claims are predominantly based on EB5AN's failure to disclose HGE's deteriorating liquidity, site-level fragility, and bridge-financing dependence— omissions that cannot be proven through "positive proof" of reliance on information that was never disclosed. *Holmes v. Bateson,* 583 F.2d 542, 558 (1st Cir. 1978) (holding that *Affiliated Ute* applies

to cases involving material omissions). For the Section 15(a) and Section 29(b) claims, no individual reliance showing is required, as liability turns on EB5AN's unregistered status and the resulting voidability of contracts. A class action is superior to other available methods because individual Class members' claims, while substantial, may not justify the costs of separate litigation, and class treatment will achieve economies of scale while ensuring consistent adjudication of EB5AN's uniform course of conduct.

59.     The Court can define one or more subclasses as needed, including subclasses aligned to particular HGE Funds or offering cohorts, and can appoint Plaintiffs as class representatives and their counsel as class counsel.

## VI.    PSLRA CERTIFICATION AND NOTICE

60.     Plaintiffs will file certifications as required by the Private Securities Litigation Reform Act of 1995 (PSLRA), attesting to, among other matters, their transactions in the relevant securities, their willingness to serve as class representatives, and that their claims were not purchased at the direction of counsel.

61.     Plaintiffs will cause notice of this action to be published as required by the PSLRA and will move for appointment of lead plaintiff and class counsel in accordance with the statute and the Federal Rules of Civil Procedure.

## VII.    CLAIMS FOR RELIEF

### COUNT I – SECURITIES FRAUD (EXCHANGE ACT § 10(b) AND RULE 10b-5(b))

62.     Plaintiffs repeat and reallege paragraphs 1 through 61 as if set forth fully herein.

63.     In connection with the offer and sale of securities, EB5AN made untrue statements of material fact and omitted to state material facts necessary to make the statements made not misleading, including but not limited to the statements in the business plans and investor materials

that the Business Venture would create 145 full-time direct positions by Year 4, that each of eleven investors would be allotted approximately 13.2 jobs, that the projects were TEA-qualified at $500,000, that investors would receive a 1.0% preferred return, and that EB5AN would serve as Special Manager administering immigration deliverables.

64.      EB5AN's omissions included HGE's deteriorating liquidity, site-level fragility, sensitivity of direct-job counts to enrollment and staffing churn and closures, and the project's dependence on bridge financing and continuing inflows of EB-5 capital to normalize cash flows and sustain operations, which were necessary to make its statements not misleading in the direct-jobs regime.

65.      EB5AN acted with scienter, or recklessly disregarded, in that it knew that its statements and omissions were materially false or misleading when made. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 324 (2007) (holding that a "strong inference" of scienter "must be more than merely plausible or reasonable—it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent"). EB5AN's scienter is demonstrated by the following particularized facts, which collectively give rise to a strong inference of scienter that is at least as compelling as any opposing inference:

> (a) **Authorship and Access to Contrary Information**: EB5AN authored, prepared, and transmitted the business plans and offering materials containing the misstatements, giving it actual knowledge of their contents. Under the PSLRA, plaintiffs must allege that "defendants had access to, or knowledge of, information contradicting their public statements when they were made." *In re Bos. Sci. Corp. Sec. Litig.*, 686 F.3d 21, 31 (1st Cir. 2012) (finding scienter adequately pleaded where complaint "contains clear allegations of admissions, internal records or witnessed discussions suggesting that at the time they

13

made the statements claimed to be misleading, the defendant[s] were aware that they were withholding vital information or at least were warned by others that this was so").

EB5AN had such access to information because, as Special Manager, it received contemporaneous correspondence and documentation regarding HE's operations.

(b) **Control Over Transaction Flow**: EB5AN controlled investor intake, escrow coordination, and subscription processing from its Puerto Rico office, providing it with direct access to information about investor flows and project capitalization, and the pace of EB-5 subscriptions relative to bridge-financing obligations. This control gave EB5AN knowledge of whether the projected capital structure was achievable.

(c) **Receipt of Contradictory Information**: On information and belief, EB5AN, as Special Manager for the HGE Funds, received or had access to HGE financial reports, enrollment data, staffing updates, and correspondence regarding school-site operations that contradicted the job-creation projections disseminated to investors. See *Brennan v. Zafgen, Inc.*, 853 F.3d 606, 613 (1st Cir. 2017) (requiring particularized allegations of access to contradictory information and noting that scienter is adequately pleaded where defendants "were aware that they were withholding vital information"); *In re Bos. Sci. Corp. Sec. Litig.*, 686 F.3d at 31. Discovery is expected to reveal specific documents and communications evidencing EB5AN's contemporaneous knowledge of HGE's deteriorating financial condition.

(d) **Strong Financial Motive**: EB5AN received transaction-based compensation per investor placement and unit interests in the Funds, creating a strong financial motive to conceal adverse information that would deter investments. While motive alone is insufficient, a plaintiff "may combine various [other] facts and circumstances indicating

fraudulent intent," including those demonstrating "motive and opportunity," to satisfy the scienter requirement. *Aldridge v. A.T. Cross Corp.*, 284 F.3d 72, 82 (1st Cir. 2002); *see also Brennan v. Zafgen, Inc.*, 853 F.3d 606, 613 (1st Cir. 2017).

(e) **Recklessness Standard**: Even if EB5AN lacked actual knowledge, it acted with "severe recklessness," which is "an extreme departure from the standards of ordinary care, and that present[s] a danger of misleading buyers or sellers which is either known to the defendant or is so obvious that the defendant must have been aware of it." *Mehta v. Ocular Therapeutix, Inc.*, 955 F.3d 194, 206 (1st Cir. 2020). EB5AN's failure to conduct or disclose basic diligence into HGE's viability, despite its role in preparing offering materials and its ongoing administration of the Funds, constitutes such an extreme departure. Plaintiffs do not allege fraud by hindsight. Rather, Plaintiffs allege that EB5AN had contemporaneous access to information—through its authorship of offering materials, its Special Manager role, and its control over intake and escrow—that contradicted its public projections at the time those projections were made.

66. EB5AN's statements and omissions were made in connection with Plaintiffs' and Class members' purchases, and EB5AN used interstate means, the mails, interstate wires, and banking channels to offer, sell, and administer the securities.

67. Plaintiffs and the Class reasonably relied on EB5AN's misstatements and omissions in deciding to invest. Plaintiffs adequately plead loss causation under both theories recognized by federal courts: the corrective disclosure theory and the materialization of concealed risk theory. *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 346 (2005) (requiring plaintiff to "prove that the defendant's misrepresentation (or other fraudulent conduct) proximately caused [the]

economic loss"). Plaintiffs' losses were proximately caused by the materialization of the precise risks that EB5AN concealed:

(a) **Liquidity Risk Materialized**: HGE's deteriorating liquidity and dependence on bridge financing, which EB5AN failed to disclose, led directly to its inability to sustain school operations, resulting in foreclosures and the Chapter 11 filing. *In re Evergreen Ultra Short Opportunities Fund Sec. Litig.*, 705 F. Supp. 2d 86, 95-96 (D. Mass. 2010) (recognizing that loss causation is "not limited to common 'corrective-disclosure-price drop' scenario" and that plaintiff may establish loss causation by alleging that "defendants' misstatements and omissions concealed the price-volatility risk…that materialized and played some part in diminishing the market value of the security").

(b) **Site-Level Fragility Materialized**: Site-level fragility and enrollment sensitivity—risks EB5AN concealed—caused widespread school closures, which eliminated the direct jobs that EB5AN represented would meet and exceed the ten-job immigration threshold. Under the materialization of concealed risk theory, plaintiffs may prove loss causation by showing that the loss was foreseeable and caused by the materialization of the risk concealed by the fraudulent statement. *Id.* at 95.

(c) **Staffing Projections Rendered Impossible**: The staffing projections EB5AN disseminated were rendered impossible by the very financial weaknesses EB5AN failed to disclose. The misstatement or omission concealed something from the market that, when disclosed, negatively affected the value of the security. *Id* at 96. Had EB5AN disclosed these risks, Plaintiffs would not have invested. But for the materialization of these concealed risks, Plaintiffs would not have lost their principal and immigration benefits. The risks that caused Plaintiffs' losses were "within the zone of risk concealed by the

16

misrepresentations." *Id.* at 95. Plaintiffs' losses were not caused by intervening factors unrelated to the alleged omissions, such as general market conditions or unforeseeable events, but rather by the specific risks EB5AN concealed. *In re Credit Suisse-AOL Sec. Litig.*, 465 F. Supp. 2d 34, 46 (D. Mass. 2006) (recognizing that causation may be established where concealed risk materializes and causes the plaintiff's loss).

68.     Plaintiffs and the Class are entitled to compensatory damages and rescission, together with prejudgment and post-judgment interest, and all further relief at law or in equity.

### COUNT II – UNREGISTERED BROKER-DEALER (EXCHANGE ACT § 15(a))

69.     Plaintiffs repeat and reallege paragraphs 1 through 68 as if set forth fully herein.

70.     EB5AN acted as an unregistered broker by engaging in the business of effecting transactions in securities for the account of others, in violation of Section 15(a)(1) of the Exchange Act, 15 U.S.C. § 78o(a)(1). A "broker" is defined as "any person engaged in the business of effecting transactions in securities for the account of others." 15 U.S.C. § 78c(a)(4)(A). Courts apply a totality-of-the-circumstances approach using nonexclusive factors to determine broker status. *Edgepoint Capital Holdings, LLC v. Apothecare Pharmacy, LLC*, 6 F.4th 50, 59 (1st Cir. 2021) (analyzing broker-dealer registration requirements under Section 15(a)); *SEC v. Morrone*, 997 F.3d 52, 61 (1st Cir. 2021) (explaining that a person may "effect transactions" by "assisting an issuer to structure prospective securities transactions," "helping an issuer to identify potential purchasers of securities, or by soliciting securities transactions"). EB5AN's conduct satisfies multiple factors characteristic of broker-dealer activity:

(a) **Solicitation and Active Recruitment**: EB5AN actively marketed the HGE Funds to prospective EB-5 investors through its website, direct communications, and promotional materials, holding itself out as the gateway for EB-5 investment opportunities. Active

recruitment of investors is a key factor in determining broker status. *Morrone*, 997 F.3d at 58 (holding that soliciting securities transactions is indicative of broker activity requiring registration).

(b) **Investment Advice and Valuations**: EB5AN advised investors on the suitability of the HGE Fund investments, including representations about TEA eligibility, job-creation projections, and immigration benefits. Providing either advice on the suitability or merit of an investment is to the merit of an investment is indicative of broker activity. *Edgepoint Capital Holdings*, 6 F.4th at 58.

(c) **Participation in Negotiations and Transaction Execution**: EB5AN controlled the "admissions" process for investors, processed subscription agreements, directed investor wire transfers to designated escrow accounts, and coordinated the release of escrowed funds—all core functions of effecting securities transactions. Participation at key points in the chain of distribution supports broker status. *Morrone*, 997 F.3d at 61 (holding that "assisting an issuer to structure prospective securities transactions" and "helping an issuer to identify potential purchasers of securities" are activities requiring broker registration).

(d) **Transaction-Based Compensation**: EB5AN received compensation directly tied to the completion of securities transactions, including placement fees calculated per investor and unit interests in the Funds contingent upon successful closings. Transaction-based compensation is a hallmark indication that a party has acted as a broker and must register. *Id*.

(e) **Regularity of Participation**: EB5AN engaged in these activities across multiple HGE Fund offerings and cohorts over an extended period, demonstrating it was "engaged in the business" of broker-dealer activities. Regular participation in securities transactions

18

is a key factor. *Edgepoint Capital Holdings*, 6 F.4th at 57; *SEC v. Morrone*, 997 F.3d at 61. EB5AN cannot claim exemption as a mere "finder" who brought parties together without further involvement. EB5AN's activities far exceeded finder functions because EB5AN provided investment advice, participated in negotiations, processed subscription materials, and received transaction-based compensation. *Edgepoint Capital Holdings*, 6F.4th at 57 (analyzing broker-dealer registration requirements and holding that activities such as structuring transactions identifying purchasers and soliciting transactions require registration regardless of how the party characterizes its role).

71.    EB5AN received transaction-based compensation and unit interests incident to these sales and administered the offerings using a Puerto Rico address and infrastructure.

72.    EB5AN was not registered with the SEC as a broker-dealer and was not a FINRA member, and no exemption applied to its conduct.

73.    EB5AN's unlawful conduct violated 15 U.S.C. § 78o(a) and proximately caused harm to Plaintiffs and the Class.

74.    Plaintiffs and the Class seek all remedies available under law and equity for EB5AN's violations, including rescission under Exchange Act § 29(b), disgorgement of EB5AN's ill-gotten gains, and appropriate injunctive and declaratory relief.

### COUNT III – RESCISSION (EXCHANGE ACT § 29(b))

75.    Plaintiffs repeat and reallege paragraphs 1 through 74 as if set forth fully herein.

76.    Plaintiffs and Class members entered into contractual relationships with EB5AN sufficient to establish privity for purposes of Section 29(b). To establish a claim under Section 29(b), a plaintiff must show that the contract was made or performed in violation of the Exchange Act, that the plaintiff is in contractual privity with the defendant, and that the plaintiff is in the

class of persons the Act was designed to protect. *Edgepoint Capital Holdings*, 6F.4th at 59 (analyzing Section 29(b) rescission in connection with Section 15(a) violations). The violation must be "inseparable from the performance of the contract" rather than "collateral or tangential." *Jalbert v. Chase (In re Servicesense.com, Inc.)*, 337 B.R. 434, 441 (Bankr. D. Mass. 2006) (adopting the inseparable-from-performance test and holding that "the violation of the Exchange Act alleged…was inseparable from the performance of the contract"). Plaintiffs satisfy the privity requirement as follows:

(a) **Direct Contracts with EB5AN**: Plaintiffs executed escrow agreements and acknowledged escrow instructions issued by EB5AN from its Puerto Rico address. These escrow agreements created direct contractual relationships between Plaintiffs and EB5AN.

(b) **EB5AN as Special Manager**: EB5AN's operating and offering documents identified EB5AN as Special Manager with defined contractual responsibilities for immigration support and investor administration. EB5AN's Special Manager role included express contractual obligations to Plaintiffs, including supporting I-526 and I-829 filings.

(c) **Inseparable from Securities Transaction**: The securities violations were inseparable from the performance of the subscription and escrow contracts because EB5AN's conduct as an unregistered broker—soliciting investors, processing subscriptions, directing escrow, and receiving transaction-based compensation—was integral to and required by the contractual arrangements. A contract can be voided where the performance of [the contract] involves the violation of the statute and the rules and regulations thereunder. *In re Servicesense.com, Inc.*, 337 B.R. at 441 (adopting Third Circuit reasoning in *GFL Advantage Fund, Ltd. v. Colkitt*, 272 F.3d 189, 202 (3d Cir. 2001)).

(d) **Section 15(a)(1) as Predicate Violation**: "Section 15(a)(1) can serve as a predicate statute to rescind a contract under Section 29(b)." *Edgepoint Capital Holdings*, 6F.4th at 59. EB5AN's unregistered broker-dealer activity violated Section 15(a)(1), and the contracts made and performed in connection with that activity are voidable.

(e) **Control Person Theory (Alternative)**: Alternatively, to the extent privity is contested, control persons may be held liable under Section 29(b) pursuant to Section 20 of the Exchange Act. *Dufoe v. DraftKings Inc.*, No. 23-cv-10524-DJC, 2024 U.S. Dist. LEXIS 116412, *34-35 (D. Mass. July 2, 2024) (denying a motion to dismiss under control person liability).

77. Those contracts were made and performed in violation of the federal securities laws, including Exchange Act § 10(b) and Rule 10b-5, and Exchange Act § 15(a), and are voidable at the election of the purchaser under Exchange Act § 29(b).

78. Plaintiffs and the Class elect to rescind and void those agreements and seek restitution of all consideration paid, together with disgorgement of EB5AN's ill-gotten gains and rescissionary damages against EB5AN.

79. To the extent any aspect of full rescission against an issuer-debtor would implicate 11 U.S.C. § 362, Plaintiffs and the Class seek as to EB5AN rescissionary damages and restitution equivalent to the consideration paid and the fees and compensation received by EB5AN, with all bankruptcy-related rights reserved.

### COUNT IV – COMMON-LAW FRAUD / FRAUDULENT INDUCEMENT

80. Plaintiffs repeat and reallege paragraphs 1 through 79 as if set forth fully herein.

81. EB5AN made the following specific fraudulent representations to Plaintiffs:

(a) In January through March 2022, EB5AN disseminated business plans stating that the "Business Venture will create 145 EB-5-eligible, full-time positions" by Year 4, with each of eleven investors "allotted approximately 13.2 full-time positions.";

(b) EB5AN's TEA designation letters and business plans represented that the investments qualified for the $500,000 TEA minimum investment threshold;

(c) EB5AN's subscription materials and I-9 letters identified EB5AN as "Special Manager" responsible for administering "immigration deliverables" and supporting I-526 and I-829 filings; and

(d) EB5AN's escrow instructions and investor correspondence directed investments to Signature Bank accounts "FBO" the HGE Funds through EB5AN's San Juan, Puerto Rico address.

82.    These representations were false and misleading because EB5AN simultaneously concealed: (i) HGE's deteriorating liquidity, including operating losses that threatened the enterprise's ability to sustain the projected schools; (ii) site-level fragility and lease risks that made individual school locations vulnerable to closure; (iii) the acute sensitivity of direct-job counts to enrollment volatility and staffing turnover; and (iv) HGE's dependence on bridge financing and continuous EB-5 inflows to maintain operations. EB5AN knew or recklessly disregarded these facts based on its access to HGE's financial information, its role in preparing offering materials, and its ongoing administration of the Funds, and it made these representations with the intent to induce Plaintiffs' investments.

83.    EB5AN's representations and omissions were material and were made knowingly or, at a minimum, recklessly, with the intent that Plaintiffs and the Class rely upon them and invest.

84.    Plaintiffs and the Class reasonably relied to their detriment, and they suffered damages proximately caused by EB5AN's fraudulent conduct when the undisclosed risks materialized.

85.    Plaintiffs and the Class are entitled to compensatory damages, together with prejudgment and post-judgment interest, and, where permitted by law, punitive damages.

### COUNT V – BREACH OF FIDUCIARY DUTY AND DUTY OF GOOD FAITH AND FAIR DEALING

86.    Plaintiffs repeat and reallege paragraphs 1 through 85 as if set forth fully herein.

87.    EB5AN owed fiduciary duties to Plaintiffs and the Class. Whether a fiduciary relationship exists is generally a factual question that "turns on the manner in which investment decisions have been reached and transactions executed for the account." *Patsos v. First Albany Corp.*, 433 Mass. 323, 332 (2001). Courts consider factors including "the degree of trust placed in the broker and the intelligence and personality of the customer," *Romano v. Merrill Lynch, Pierce, Fenner & Smith*, 834 F.2d 523, 530 (5th Cir. 1987), and whether the customer "reposed confidence in another and reasonably relied on the other's superior expertise or knowledge." *Sergeants Benevolent Ass'n Annuity Fund v. Renck*, 19 A.D. 3d 107, 110 (N.Y. App. Div. 2005). EB5AN owed fiduciary duties to Plaintiffs and the Class arising from the following facts and circumstances:

(a) **Control Over Investor Admissions and Suitability**: EB5AN controlled all aspects of investor "admissions," including evaluating investor suitability—a function that placed investors' interests in EB5AN's hands. "Proof of practical control of a customer's account by a broker will establish that the broker owes fiduciary duties to the customer." *Paine, Webber, Jackson & Curtis, Inc. v. Adams*, 718 P.2d 508, 517 (Colo. 1986).

(b) **Control Over Investor Funds**: EB5AN directed and controlled investor funds through escrow accounts it designated, creating a relationship of trust and confidence regarding the safekeeping and proper deployment of investor capital. Control over client funds is "a key factor in the existence of a fiduciary relationship." *E.g., Apollo Capital Fund LLC v. Roth Capital Partners, LLC*, 158 Cal. App. 4th 226, 228 (2007).

(c) **Assumption of Fiduciary Role as Special Manager**: EB5AN assumed the role of Special Manager, a title and function that carried express responsibilities for administering immigration deliverables and supporting I-526 and I-829 filings on behalf of investors—functions requiring loyalty and care. By holding itself out as an expert and guide through the complex EB-5 process, EB5AN "accept[ed] greater responsibility to [investors]." *Patsos*, 433 Mass. at 335.

(d) **Investor Unsophistication and Reliance**: Plaintiffs were foreign nationals unfamiliar with U.S. securities and immigration law who placed significant trust and reliance in EB5AN's expertise. An investor's "lack of investment acumen may be an important consideration" in finding fiduciary duties. *Patsos*, 433 Mass. at 334. Where the broker "holds himself out as an expert in a field in which the customer is unsophisticated," fiduciary duties may arise. *Id.* at 335.

(e) **Superior Knowledge and Information Asymmetry**: EB5AN possessed superior knowledge about HGE's financial condition, site-level risks, and the feasibility of job-creation projections, while investors lacked access to this information and depended on EB5AN's disclosures. *See Davis v. Merrill Lynch, Pierce, Fenner & Smith*, 906 F.2d 1206, 1216 (8th Cir. 1990) (finding fiduciary duty where customer "totally relied on the advice of her broker").

(f) **De Facto Control**: EB5AN exercised de facto control over Plaintiffs' investment decisions because Plaintiffs routinely followed EB5AN's recommendations regarding the HGE Funds. "[I]f for all practical purposes the broker exercised de facto control over a nondiscretionary account and the client routinely followed the recommendations of the broker, then a finding of fiduciary duty may be warranted." *Davis*, 906 F.2d at 1217.

88.    These facts establish that EB5AN's relationship with Plaintiffs transcended an arm's-length commercial transaction and gave rise to duties of loyalty, candor, and due care under Puerto Rico and Florida law.

89.    EB5AN breached those duties by failing to conduct or disclose basic diligence, prioritizing its compensation and unit interests, and steering investors into unsuitable, non-compliant direct-job-dependent offerings without disclosing material countervailing facts.

90.    EB5AN's breach proximately caused damages to Plaintiffs and the Class, and they are entitled to damages and disgorgement of EB5AN's ill-gotten gains.

## COUNT VI – UNJUST ENRICHMENT / MONEY HAD AND RECEIVED

91.    Plaintiffs repeat and reallege paragraphs 1 through 90 as if set forth fully herein.

92.    EB5AN received fees, compensation, and unit interests traceable to Plaintiffs' and Class members' funds.

93.    It would be unjust for EB5AN to retain those benefits obtained through unlawful and fraudulent conduct and through breaches of duties owed to investors.

94.    Plaintiffs and the Class are entitled to restitution and disgorgement of EB5AN's ill-gotten gains, together with appropriate equitable relief.

## COUNT VII – ACCOUNTING AND CONSTRUCTIVE TRUST

95.     Plaintiffs repeat and reallege paragraphs 1 through 94 as if set forth fully herein.

96.     The fund flows, fees, and unit allocations related to EB5AN's conduct are complex and within EB5AN's exclusive knowledge and control, and an accounting is necessary to trace investors' funds and EB5AN's profits.

97.     EB5AN obtained and retains property traceable to Plaintiffs and Class members by fraud, breach, or mistake, and equity requires the imposition of a constructive trust over identifiable proceeds and assets for the benefit of Plaintiffs and the Class.

## VIII. ALLEGATIONS SATISFYING THE PSLRA

98.     Plaintiffs plead with particularity each materially false statement and omission identified above and the reasons why those statements were false or misleading when made, including the failure to disclose material adverse facts about liquidity, site fragility, direct-job sensitivity, and bridge-financing dependence that, in the direct-jobs regime, rendered EB5AN's projections and assurances misleading.

99.     Plaintiffs allege facts giving rise to a strong inference of scienter that is cogent and at least as compelling as any opposing inference, including EB5AN's authorship and transmission of the offering materials, its control over intake and escrow, its Puerto Rico-centered administration, its Special Manager status and immigration-facing representations, and its receipt of transaction-based compensation and unit interests.

100.    Plaintiffs adequately allege loss causation by explaining how the risks concealed by EB5AN materialized in 2025 in the form of HGE Chapter 11 cases and widespread closures that destroyed the staffing assumptions and eliminated necessary direct jobs, thereby causing the losses suffered by Plaintiffs and the Class.

101.    The PSLRA safe harbor for forward-looking statements does not shield EB5AN's misstatements for the following reasons:

(a) The safe harbor does not apply to statements of present or historical fact, and EB5AN's representations about its role as Special Manager, the TEA designations, the capital structure, and the existing bridge-financing arrangements were statements of present fact, not forward-looking projections.

(b) To the extent EB5AN's job-creation projections were forward-looking, they were not accompanied by meaningful cautionary language—any cautionary language was generic boilerplate that did not specifically warn investors of HGE''s deteriorating liquidity, site-level lease and asset risks, enrollment sensitivity, or dependence on continued EB-5 inflows.

(c) Under the "bespeaks caution" doctrine, cautionary language must be tailored to the specific risks that rendered the projections misleading, which EB5AN's materials failed to provide.

(d) The safe harbor is unavailable where, as here, the defendant had actual knowledge that the forward-looking statements were false or misleading when made—EB5AN's access to HGE's financial information, its authorship of the offering materials, and its ongoing administration of the Funds establish that EB5AN knew the job-creation projections were not achievable given HGE's actual financial condition and operational fragility.

**Timeliness of Claims**

102.    Plaintiffs' claims are timely under both the statute of limitations and the statute of repose.

(a) **Statute of Limitations**: Section 10(b) claims are subject to a two-year statute of limitations that begins to run when the plaintiff discovers, or a reasonably diligent plaintiff would have discovered, the facts constituting the violation. *See Merck & Co. v. Reynolds*, 559 U.S. 633, 653 (2010). Plaintiffs did not discover, and could not reasonably have discovered, the facts underlying their claims until on or about 2025, when HGE and its affiliates filed Chapter 11 and widespread school closures revealed the falsity of EB5AN's projections and the concealed risks.

(b) **No Inquiry Notice Before 2025**: Prior to that time, EB5AN's omissions prevented Plaintiffs from learning of HGE's deteriorating liquidity, site-level fragility, and dependence on bridge financing. Plaintiffs were not on "inquiry notice" of the fraud before 2025 because: (a) EB5AN's offering materials did not disclose HGE's true financial condition; (b) Plaintiffs, as foreign nationals unfamiliar with U.S. securities law, lacked independent means of discovering the concealed risks; (c) no public disclosure prior to 2025 revealed the facts underlying Plaintiffs' claims; and (d) the mere fact that HGE may have experienced operational challenges before 2025 did not put Plaintiffs on notice that EB5AN had committed securities fraud, as opposed to HGE experiencing ordinary business difficulties.

(c) **Discovery in 2025**: It was only when HGE filed Chapter 11 in 2025 and widespread school closures eliminated the projected direct jobs that the falsity of EB5AN's projections became apparent and Plaintiffs discovered, or reasonably could have discovered, the facts constituting the violations alleged herein.

28

(b) **Timeliness**: Accordingly, the statute of limitations for Plaintiffs' Section 10(b) claims began to run no earlier than 2025, and this action is timely filed within two years of discovery.

(c) **Statute of Repose**: Section 10(b) claims are also subject to a five-year statute of repose that runs from the date of the violation. See 28 U.S.C. § 1658(b)(2). The alleged violations occurred in January through March 2022. This action is filed within five years of those violations and is therefore timely under the statute of repose.

### PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, Plaintiffs, individually and on behalf of the Class, respectfully request that the Court enter judgment in their favor and against EB5AN and award the following relief:

1. Certify this action as a class action under Rule 23, appoint Plaintiffs as class representatives, and appoint their counsel as class counsel;

2. Award rescission of Plaintiffs' and the Class's securities purchases and related contracts under Exchange Act § 29(b) and order restitution of all consideration paid;

3. Award compensatory and rescissionary damages to Plaintiffs and the Class, including prejudgment and post-judgment interest, for violations of Exchange Act § 10(b) and Rule 10b-5 and common law;

4. Order disgorgement and restitution of EB5AN's ill-gotten gains, including all fees, compensation, and unit interests traceable to Plaintiffs' and Class members' investments;

5. Enter appropriate injunctive and declaratory relief, including enjoining EB5AN from acting as a broker or dealer without proper registration and declaring void and voidable the contracts made and performed in violation of the federal securities laws;

6.     Impose a constructive trust over funds and assets traceable to Plaintiffs' and Class members' investments and to EB5AN's compensation, and order an accounting sufficient to trace those funds and EB5AN's profits derived from those funds;

7.     Award Plaintiffs and the Class their costs of suit and reasonable attorneys' fees as permitted by applicable law; and

8.     Grant such other and further legal or equitable relief as the Court deems just and proper.

9.     Plaintiffs demand a trial by jury on all issues so triable.

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico, on this 16th day of April 2026.

**IT IS HEREBY CERTIFIED** that on this same date, the undersigned counsel electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all attorneys of record.

| | |
|---|---|
| **Law Offices of Robert V. Cornish, Jr., PC**<br>680 South Cache Street<br>Suite 100<br>P.O. Box 12200<br>Jackson, WY 83001<br>Tel. 307-264-0535<br>Fax: 571-290-6052 | **PIETRANTONI MÉNDEZ & ÁLVAREZ LLC**<br>Popular Center, 19th Floor<br>208 Ponce de León Avenue<br>San Juan, Puerto Rico 00918<br>Tel. 787-274-1212<br>Fax: 787-274-1470 |
| *s/ Robert V. Cornish, Jr.*<br>Robert V. Cornish, Jr. (pro hac vice forthcoming)<br>rcornish@rcornishlaw.com | *s/ María Dolores Trelles Hernández*<br>María Dolores Trelles Hernández<br>USDC No. 225106<br>mtrelles@pmalaw.com |
| Kaitlin Harris (pro hac vice forthcoming)<br>kharris@rcornishlaw.com | *s/ María Elena Martínez*<br>María Elena Martínez<br>USDC-PR No. 305309<br>mmartinez@pmalaw.com |